**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Daisy Lynne Meadows,[1]

Plaintiff

v.

State of Nevada, et al,

Defendants

Case No.: 2:23-cv-00214-JAD-NJK

**Order Granting Motion for Summary Judgment and Closing Case**

[ECF Nos. 33, 51]

Plaintiff Daisy Lynne Meadows brings this civil-rights action under 42 U.S.C. § 1983, alleging that she has been discriminated against and mistreated based on gender labels and has not been transferred to a prison housing female inmates. I previously dismissed her First, Fourth, Fifth, and Eighth Amendment claims, and all that remains is her Fourteenth Amendment equal-protection claim for gender-based discrimination against former Governor Steve Sisolak, Attorney General Aaron Ford, Nevada Department of Corrections (NDOC) Deputy Director Brian Williams, Associate Warden Julie Williams, Warden Renee Baker, Bryan Shields, James Kendal Jones, Secretary of State Cisco Aguilar, Warden Isidro Baca, and Warden Jeremy Bean. The defendants move for summary judgment, arguing that Meadows has failed to establish a genuine factual dispute, the defendants lacked personal participation in the decision to deny the transfer to the women's prison, and the defendants are entitled to qualified immunity. Because Meadows does not establish a genuine factual dispute about whether the defendants were involved in the decision not to transfer her, I grant the motion for summary judgment and close

[1] In the complaint, the plaintiff lists her name as "Mrs. Daisy Lynne Meadows." ECF No. 11 at 2. Because Meadows identifies as female, I use her preferred name and pronouns in this order.

this case. Meadows also filed a motion for a "rebuke injunction," which I deny because no viable claims remain in the case.

## Background

### A. Meadows's factual allegations[2]

Meadows alleges that the defendants violated her rights by categorizing her as transgender and not as a female inmate.[3] She claims that the defendants singled her out and kept her at a male prison and did not transfer her to Nevada's Florence McClure Women's Correctional Center ("FMWCC").[4] For example, Meadows told Warden Baca at a classification hearing that she is female and needs to be placed at FMWCC.[5] In addition, Warden Baker at FMWCC knew of Meadows's desire to be placed at the female prison.[6] But both wardens refused Meadows's transfer request.[7] Other state and prison officials knew about Meadows's situation but failed to order her transfer to FMWCC over the past five years.[8] Finally, Jones denied Meadows's grievance requesting a new classification hearing so that she could be transferred to FMWCC,[9] and Jones denied being involved in any housing decisions relating to Meadows.[10]

---

[2] These facts are taken from Meadows's complaint, which is signed under penalty of perjury. ECF No. 11 at 15. I thus treat any facts alleged within Meadows's personal knowledge as evidence for the purposes of resolving this summary-judgment motion.

[3] ECF No. 11 at 4.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 5.

[7] *Id.* at 4–5.

[8] *Id.* at 5.

[9] *Id.* at 6.

[10] *Id.*

## Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[11] If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[12] The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[13] The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[14] But the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving testimony.'"[15]

### A. The defendants lacked personal participation in the decision to deny Meadows's transfer.

To succeed on a 1983 claim, a plaintiff must "allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of [her] civil rights."[16] Meadows contends that the defendants are aware of her situation, including the sexual assault

---

[11] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[12] *Id.* at 323.

[13] *Id.* at 322.

[14] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[15] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

[16] *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

that she has faced in prisons that house male inmates.[17] In her complaint, she alleges that Baker has "denied" and "ignored" her requests to be transferred, Sisolak was "also notified by the Plaintiff but was ignored," and Mercedes Maharis[18] "had conversations with" and Meadows sent letters to Ford about the abuse she was dealing with.[19] She states that she has "been notifying" the Board of Prison Commissioners (which includes Ford and Aguilar and formerly included Sisolak) of her situation, "even submitting a 40 plus page pardon and thorough explanation and request to be released or sent to FMWCC," and that she "received a generic rubber-stamped response denying both."[20] Meadows further alleges that she received a response to a grievance from Jones and that he "lied about not being involved in housing decisions."[21] She also alleges that she spoke with Shields on the phone after several sexual assaults and that he "refused to properly classify and house [her] at FMWCC" and that Brian Williams, Julie Williams, and Jeremy Bean are all aware of Meadows's situation because they worked at High Desert State Prison when she was incarcerated there.[22]

But the record establishes without genuine dispute that none of the defendants had the authority to transfer Meadows to FMWCC or take part in the decision about whether she should be transferred. Ford declares under penalty of perjury that he, Sisolak, and Aguilar had no knowledge of the request and were not involved in decisions about where Meadows is

---

[17] ECF No. 39 at 5.

[18] Meadows identifies Mercedes Maharis as "Councilwoman," but she is not an elected official. Maharis is a longtime prisoner advocate. Tom Gorman, *An Unlikely Advocate Seeks Prison Reform*, Los Angeles Times (Aug. 18, 2000), https://www.latimes.com/archives/la-xpm-2000-aug-18-mn-6526-story.html.

[19] ECF No. 11 at 5.

[20] *Id.* (cleaned up).

[21] *Id.* at 6.

[22] *Id.* at 7.

incarcerated.[23] Shields stated in his declaration that he was aware of Meadows because he investigated multiple complaints that she made against employees of NDOC, but that those complaints were unrelated to her housing situation, the results of the investigation "showed that none of [Meadows's] claims were substantiated," and neither he nor his predecessor, Jones, has authority to transfer offenders to the FMWCC.[24] Bean was also aware of Meadows because she was at the prison where he was the warden, but he also lacked authority to transfer transgender inmates to FMWCC.[25] Julie Williams, Baca, and Baker also served in warden positions and thus had no authority to approve the transfer of offenders to a different institution because of their gender identity.[26] Finally, Brian Williams did not have authority as the Deputy Director of NDOC or as the warden of High Desert State Prison to transfer Meadows to FMWCC.[27]

None of Meadows's allegations create a genuine issue about whether the defendants participated in the decision not to transfer Meadows to FMWCC.[28] Allegations that they knew that she was a transgender woman[29] and that she was subject to abuse in the men's prisons are not enough for them to be liable under § 1983 because they did not take part in the decision to

---

[23] ECF No. 33-4 at ¶ 1–18.

[24] ECF No. 33-5 at ¶ 6–11.

[25] ECF No. 33-6 at ¶ 6–11.

[26] *Id.* at ¶ 11.

[27] ECF No. 33-7 at ¶ 7.

[28] I have reviewed the exhibits attached to Meadows's complaint and response to the motion for summary-judgment. They largely consist of inmate grievances that Meadows has filed, and they do not show that any of the defendants personally participated in the decision not to transfer her to FMWCC.

[29] In her response to the motion for summary judgment, Meadows contends that she is not transgender and that this is a derogatory term. ECF No. 39 at 9. But NDOC records list her as male, and decisions about her transfer and her case are premised on the notion that she is a transgender woman. So I find it appropriate to refer to her as such, noting that I do not do so with the understanding that the term is derogatory.

keep her in the men's prison. And in her response to the summary-judgment motion, Meadows does not add any facts that bolster her claim and she does not cite any case law. Because Meadows has failed to establish a genuine issue of material fact, her claim cannot survive summary judgment and I grant the motion.[30] I also deny her motion for a "rebuke injunction"[31] because there are no claims left in this case.[32]

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 33] is GRANTED**. IT IS FURTHER ORDERED that the motion for "rebuke injunction" **[ECF No. 51] is DENIED**. The Clerk of Court is directed to **ENTER JUDGMENT** in favor of the defendants and against the plaintiff and **CLOSE THIS CASE.**

U.S. District Judge Jennifer A. Dorsey
October 29, 2026

---

[30] Because the defendants have shown that they did not personally participate in transfer decisions about Meadows and that is fatal to her claim, I need not and do not address their alternative arguments for summary judgment.

[31] ECF No. 51.

[32] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits.").